IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **SAMUEL PEACOCK,** *on behalf of himself and those similarly situated*, | ) ) ) |
| **Plaintiff,** | ) ) ) |
| **v.** | ) )   No. 22-cv-02315 ) |
| **FIRST ORDER PIZZA, LLC, TY TURNER, and JAMES HOLMES,** | ) ) |
| **Defendants.** | ) ) |

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; DISMISSING THE COMPLAINT WITHOUT PREJUDICE; AND GRANTING ATTORNEYS' FEES AND COSTS PURSUANT TO THE AGREEMENT**

Before the Court are Defendants First Order Pizza, LLC, James Holmes, and Ty Turner's July 6, 2022 Motion to Dismiss and Compel Arbitration and their Correction to the Motion (collectively, the "Motion"). (ECF Nos. 19, 20.) Plaintiff Samuel Peacock filed a response on August 3, 2022. (ECF No. 32.) Defendants filed a reply on August 29, 2022. (ECF No. 36.) For

the following reasons, the Motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE.**

I.   **Background**

Defendant First Order Pizza, LLC is a limited liability company that operates several Domino's Pizza stores in Tennessee. (ECF No. 1 at 2-3.) Defendants Ty Turner and James Holmes are franchisees who operate First Order Pizza's Domino's Pizza stores. (Id. at 3.) Plaintiff Samuel Peacock works as a delivery driver at the Domino's Pizza stores owned by First Order Pizza and operated by Ty Turner and James Holmes. (Id. at 2.)

Plaintiff brings two claims under the Fair Labor Standards Act (the "FLSA"). 29 U.S.C. § 203. Plaintiff alleges Failure to Pay Minimum Wages and Failure to Pay Overtime Wages. (ECF No. 1 at 18-20.) Plaintiff also alleges unjust enrichment resulting from the purported FLSA claims. (Id.) Plaintiff alleges that he was required to pay automobile expenses such as gas and maintenance. (E.g. id. at ¶ 150.) He maintains that Defendants do not track actual automobile expenses and reimburse drivers at a rate below the Internal Revenue Service standard business mileage rate. (E.g. id. at ¶¶ 83-88.) Consequently, Plaintiff argues that Defendants' reimbursement is insufficient to cover actual costs, causing Plaintiff's actual wages and actual overtime wages to fall below the amounts required by the FLSA. (Id. at ¶¶ 152, 158.) Plaintiff alleges that this failure to pay

has unjustly enriched the Defendants. (Id. at ¶¶ 161-64.)
Plaintiff requests damages and restitution in the amount of the
unpaid wages. (Id. at ¶¶ 153, 159, 164.) He brings his claims on
behalf of himself and similarly situated individuals. Plaintiff
seeks conditional certification of an FLSA collective action
pursuant to 29 U.S.C. § 216(b) and authorization to send notice
of the pending action to his similarly-situated co-workers. (ECF
No. 21.)

Defendants ask the Court to dismiss the case and compel
arbitration pursuant to an arbitration agreement entered into by
both parties. (ECF. No. 19.) The agreement requires "that all
Covered Claims shall be submitted to final and binding
arbitration in accordance with the terms of this Agreement."
(ECF No. 20-1.) The agreement covers all claims under the FLSA.
(Id.) It includes a class and collective action waiver. (Id.) It
also provides that, if a party to the agreement files suit in
federal court alleging claims that are covered by the agreement
and fails to dismiss the suit within ten days of being notified
of the existence of the agreement, the filing party is liable
for the responding party's costs incurred in dismissing the suit.
(Id.) Plaintiff responds that the arbitration agreement is
unenforceable because it fails for lack of consideration, is
inconsistent with the FLSA, is unconscionable, and fails to
vindicate Plaintiff's rights. (ECF No. 32.)

3

## II.  Jurisdiction

### A. Jurisdiction

District courts have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff seeks recovery under the FLSA. Defendants' Motion is based on the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, et seq. (ECF No. 19 at 1.) The Court has jurisdiction.

### B. Choice of Law

Under the FAA, arbitration agreements may be invalid on grounds that "exist at law" for the revocation of contracts. See 9 U.S.C. § 2. "In other words, whether an arbitration clause is enforceable is governed by state law." Stutler v. T.K. Constructors, Inc., 448 F.3d 343, 345 (6th Cir. 2006). State law determines the applicability of contract defenses such as fraud, duress, or unconscionability. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); see Floss v. Ryan's Fam. Steak House, Inc., 211 F.3d 306, 314–15 (6th Cir. 2000).

When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  As evidenced by their respective briefs, both parties assume that Tennessee law applies. (ECF Nos. 32, 36.) The Court will apply Tennessee law.

4

### III. Standard of Review

When there is a written agreement to arbitrate and one party refuses to arbitrate, the other party may petition the district court to compel the refusing party to comply with the terms of the agreement. See 9 U.S.C. § 4. The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civil action. See Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). The Court must consider whether a reasonable trier of fact could conclude that no arbitration agreement exists. Id.

The movant bears the burden of establishing the existence of "a binding agreement to arbitrate." Gala v. Tesla Motors TN, Inc., No. 2:20-cv-2265, 2020 WL 7061764 (W.D. Tenn. Dec. 2, 2020). If that showing is made, the burden shifts to the nonmovant to demonstrate that the validity of the agreement is "in issue." Great Earth Cos., 288 F.3d at 889. To show that the validity of an arbitration agreement is "in issue," the nonmovant "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Id. Courts must construe the facts and reasonable inferences in the light most favorable to the nonmovant. Id.

## IV.  Analysis

### A. Arbitration Precedent

Throughout his brief, Peacock argues that the caselaw governing arbitration needs to be reconsidered because prior assumptions about arbitration are inaccurate. (See ECF No. 32.) Peacock also argues that Morgan v. Sundance, Inc. requires reconsideration of arbitration-related precedent. (Id. at 12 (citing 142 S. Ct. 1708, 1713-14 (2022).) In considering Peacock's assertion that the caselaw rests on inaccurate assumptions about arbitration, the Court is bound by precedent from the Supreme Court and Sixth Circuit. The Court cannot reconsider those decisions and decide for itself whether they were correct. As to Peacock's assertion that Sundance requires reconsideration of past cases, Sundance did not approve reconsideration of all arbitration-related precedent. The Supreme Court there explained that the FAA's liberal policy favoring arbitration had been misused in certain cases to create arbitration-preferring procedural rules. Sundance, 142 S. Ct. at 1713. The Supreme Court further explained that the FAA was intended to put arbitration agreements on the same footing as other contracts. Id. To the extent Sundance requires reconsideration of past cases, it is limited to cases that created special, arbitration-preferring procedural rules. The cases on which the Court relies here do not implicate any

"special, arbitration-preferring procedural rules." Id. The parties' arbitration agreement is analyzed like any other contract. See id.

### B. Contract Formation

Peacock argues that the arbitration agreement is void for lack of consideration because Defendants' promise is illusory. (ECF No. 32 at 18.) Specifically, Peacock argues that Defendants have an unlimited ability to terminate or modify the agreement. (Id.) Defendants respond that, under the agreement, their ability to modify or terminate does not alter their promise to arbitrate claims against Plaintiff. (ECF No. 36 at 3.) Defendants also contend that their promise to employ and pay Peacock constitutes sufficient consideration for Peacock's agreement to submit to arbitration. (Id. at 4-5.)

The following portion of the arbitration agreement is the source of the dispute:

> The Company may terminate or modify these procedures at any time. The termination or modification of these procedures shall not affect the validity of any Arbitration Agreement signed prior to the effective date of such termination or modification. In the event of termination of these procedures, all claims arising under Arbitration Agreements signed prior to the effective date of such termination will be processed in accordance with this Arbitration Agreement.

(ECF No. 20-1.)

Defendants' argument that the terms of the agreement protect Plaintiff against unliteral modification is not well taken. However, the Sixth Circuit has held that the duty of good faith and fair dealing precludes amendment for an improper or oppressive purpose. Howell v. Rivergate Toyota, Inc., 144 Fed. App'x 475, 479 (6th Cir. 2005) (citing Elliott v. Elliott, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004)(reversed on other grounds)). A modification that is inconsistent with the stated purpose of an arbitration agreement would be improper and oppressive, even if the agreement did not explicitly limit changes to those consistent with the agreement's purpose. Brubaker v. Barrett, 801 F. Supp. 2d 743, 755 (E.D. Tenn. 2011) (citing Howell, 144 Fed. App'x at 479). As in Brubaker, the agreement here provides that its intent is to resolve all disputes through binding arbitration. (ECF No. 20-1 at 1.) The agreement states:

> It is First Order Pizza, LLC's intent to resolve all disputes with employees in good faith, fairly, and efficiently by requiring either party to pursue any Covered Claims, as defined below, against the other by final and binding arbitration before a neutral arbitrator . . . (Id.)

Because any changes must be consistent with the agreement's stated intent, a change that might render the

promise illusory is precluded. The promise is not illusory.[1]
Brubaker, 801 F. Supp. 2d at 755.

Because the modification provision does not create an
illusory promise, the Court need not decide whether the promise
to employ and pay Peacock constituted consideration for the
arbitration clause.

### C. Compatibility with the FLSA

Peacock asserts that the FLSA precludes arbitration in
this case for two reasons. First, he argues that the FLSA has
both private and public goals. The public goals focus on
workers as a group, rather than as individuals. By increasing
workers' bargaining power, the statute aims to increase wages
and minimum working standards for all workers. Peacock argues
that the FLSA's public goals cannot be achieved if individual
workers can waive the FLSA's protections because doing so will
suppress wages for other workers. (ECF No. 32 at 26-28.)

The Supreme Court has made clear that arbitration is
consistent with the FLSA. Epic Systems Corp. v. Lewis, 138 S.

---

[1] Peacock claims that an unlimited right to modify arbitration
procedures constitutes an illusory promise under Sixth Circuit
precedent. (ECF No. 32 at 23-24 (citing Floss, 211 F.3d at 310).)
However, the Sixth Circuit has explained that Floss applies to
agreements between a party and a third-party arbitrator. Howell,
Inc., 144 F. App'x at 480. Floss does not apply to an agreement
between an employee and an employer. Id.

Ct. 1612, 1626 (2018) (noting that "[e]very circuit to consider the question has held that the FLSA allows agreements for individualized arbitration."). The Sixth Circuit has specifically held that arbitration does not frustrate the purposes of the FLSA. Floss, 211 F.3d at 306 ("Though a claim under the FLSA certainly serves a purpose beyond providing relief to an individual claimant, we fail to see how the broader policies furthered by such a claim are hindered when that claim is resolved through arbitration.").

Second, Peacock argues that FLSA disputes resolved through arbitration must be subject to approval by the Department of Labor (the "DOL") or a district court. (ECF No. 32 at 29-33.) Peacock derives this requirement from the fact that FLSA settlements must be approved by the DOL or a district court and that an agreement to arbitrate is a settlement. (Id. at 29.)

The requirement Peacock asserts is not found in the text of the statute. The Court is not aware of any circuit court that has applied the settlement oversight requirement to arbitration agreements, and Peacock cites no authority for it. (See id.)

Peacock supports his claim by analogy. He argues that, just as a worker cannot consent to work for less than the minimum wage, a worker cannot allow an arbitrator to authorize

10

him to work for less than the minimum wage. (Id. at 33-34.) The comparison is inapt. An arbitrator resolves disputes based on facts and law. He does not dictate outcomes by fiat. An arbitrator might make a mistake that results in an employee's earning less than the minimum wage. However, agreeing to a procedure that might inadvertently result in an impermissible outcome is not the same as agreeing to the outcome.

**D. Adhesion Contract**

Under Tennessee law, a contract of adhesion is a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996). Courts do not infer from the fact that a contract is a standardized form offered on a take-it-or-leave-it basis that the consumer or employee has no choice but to accept it. Cooper v. MRM Investment Co., 367 F.3d 493, 500 (6th Cir. 2004) (citing Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351 (Tenn. Ct. App. 2001)). The employee must present evidence that the employee had no other opportunities for employment. Id. Peacock does not make any specific factual allegations about his inability to obtain employment elsewhere. (See ECF No. 32 at

11

37-43.) Instead, he makes several general assertions about the prevalence of arbitration agreements and delivery drivers' lack of bargaining power. (Id. at 7, 41.) In the Sixth Circuit, general assertions about market conditions can provide context for evaluating an adhesion contract claim, but specific evidence of the nonmovant's lack of other opportunities is required to satisfy the adhesion contract analysis. Cooper, 367 F.3d at 502 (finding the nonmovant failed to meet her burden because she "[left] the record silent on whether other local employers might have hired her without a similar agreement."). The Court is required to view the evidence in the light most favorable to the nonmovant, Great Earth Cos., 288 F.3d at 889, but Peacock has not provided any evidence to support his assertions.

Because Peacock has not established the existence of an adhesion contract, the Court need not consider whether the contract is unenforceable because it contains oppressive terms. Buraczynski, 919 S.W.2d at 316. That issue must be considered in analyzing Peacock's unconscionability claim.

### E. Unconscionability

Tennessee law recognizes both procedural and substantive unconscionability. Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001). Tennessee law

12

tends "to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." Id.

Tennessee caselaw does not clearly provide that a finding of procedural unconscionability, alone, is sufficient to invalidate a contract.[2] Trinity Indus., 77 S.W.3d at 170-71 (stating that unconscionability may arise from procedural unconscionability or substantive unconscionability, but also explaining that Tennessee courts tend to "lump the two together.").

The Sixth Circuit has held that a finding of substantive unconscionability cannot be based entirely on a finding of

---

[2] Defendants claim that Tennessee requires a finding of both procedural and substantive unconscionability. (ECF No. 36 at 20 (citing Anderson v. Amazon.com, Inc., 490 F. Supp. 3d 1265, 1274 (M.D. Tenn. 2020) and Iysheh v. Cellular Sales of Tenn., LLC, No. 05-1082, 2018 WL 2207122, at *5 (E.D. Tenn. 2018)).) The cases Defendants cite are persuasive authority. Neither offers a compelling basis for the finding that both types of unconscionability are required. Iysheh bases its finding on Cooper. Iysheh, 2018 WL 2207122, at *5. Cooper does not clearly state that both types of unconscionability are required. Because it found a lack of procedural unconscionability and a lack of substantive unconscionability, its result is consistent with both being required or either being sufficient. Cooper, 367 F.3d at 503. Anderson bases its finding on Iysheh. Anderson, 490 F. Supp. 3d at 1274.

procedural unconscionability because that approach would invalidate practically every employment contract, frustrating the intent of the FAA to subject employment disputes to valid arbitration agreements. Cooper, 367 F.3d at 504-05. If procedural unconscionability alone were sufficient to invalidate the contract, the same problem would arise. The better method is to view Tennessee's blending approach as a requirement.

Under the blending approach, the finding of procedural unconscionability informs the substantive unconscionability analysis. Cooper, 367 F.3d at 504 ("In a close case, terms bordering on substantive unconscionability may look more unfair in light of circumstances suggesting that the stronger party pressed his advantage against the weaker party.").

### 1. Procedural Unconscionability

The procedural unconscionability analysis requires evidence of differences in education, intelligence, business acumen, and other factors that demonstrate a difference in bargaining power. Cooper, 367 F.3d at 504. Peacock asserts that "many delivery drivers possess only a high school degree," but Defendants "operate a sophisticated business enterprise" and "possess highly competent attorneys." (ECF No. 32 at 41.)

Defendants suggest that a difference in sophistication between the parties is not enough to find procedural unconscionability. (ECF No. 36 at 21 (citing Cooper, 367 F.3d at 504-05 and Elliot v. NTAN, LLC, No 3:18-cv-00638, 2018 WL 6181351, at *5 (M.D. Tenn. Nov. 27, 2018)).) The cited cases do not support Defendants' conclusion.[3] The bargaining power analysis can be dispositive. Morrison v. Circuit City, 317 F.3d 646, 666-67 (6th Cir. 2003) (refusing to find procedural unconscionability because the plaintiff had graduated from the Air Force Academy and had a master's degree in administration).

Under Tennessee law, the Court must also consider whether the arbitration provision was buried in a lengthy contract and whether the agreement clearly indicates the procedural rights each party is waiving. Wofford v. M.J. Edwards & Sons Funeral Home Inc, 490 S.W.3d 800, 822 (Tenn. Ct. App. 2015) (collecting cases).

Peacock specifically cites factors that speak to a difference in bargaining power. (ECF No. 32 at 41.) However, several factors weigh against a finding of procedural

---

[3] Cooper did not hold that the difference in bargaining power between a fast-food worker and a sophisticated employer was insufficient to find procedural unconscionability. Cooper found a lack of procedural unconscionability because the employee in that case failed to present evidence of differences in bargaining power. Cooper, 367 F.3d at 504. Defendants' reliance on Elliot rests on the same understanding of Cooper. Elliot, 2018 WL 6181351, at *5.

unconscionability.  The arbitration agreement is short. (See
ECF No. 20-1.) There is no indication in the record that it is
buried in a lengthy contract. It clearly states the rights each
party is waiving. (Id. at 2.) The procedural unconscionability
analysis does not favor Plaintiff.

### 2. Substantive Unconscionability

Peacock argues the agreement is substantively
unconscionable because it only benefits Defendants. (ECF No. 32
at 42.) Peacock argues that only Defendants benefit from a
waiver of appellate review and collective litigation, only
Defendants will use the arbitration process, and only
Defendants benefit from the private nature of the outcomes.
(Id. at 42-43.)

Peacock's arguments are not well taken. Addressing the
claim that only Defendants benefit from the differences between
arbitration procedure and judicial procedure, the Supreme Court
has held that simpler, less costly dispute resolution
procedures benefit employees as well as employers. See Circuit
City Stores v. Adams, 532 U.S. 105, 122-23 (2001).

Although Plaintiff claims that only employers will use
arbitration, Defendants cite instances in which employees might
compel arbitration for claims brought by an employer. (ECF No.

16

36 at 24 (listing theft, conversion, property damage, and
vehicle damage).) As the Circuit City Court explained, many of
the benefits of arbitration extend to both parties, regardless
of which party is bringing the action. Circuit City Stores, 532
U.S. at 123 (explaining, for example, that arbitration avoids
complex choice-of-law questions that are common in employment
disputes).

Addressing Plaintiff's argument that arbitration
frustrates the FLSA's purpose because results are kept private,
the Supreme Court has made clear that arbitration is consistent
with the FLSA. Epic Systems Corp., 138 S. Ct. at 1626 (noting
that "[e]very circuit to consider the question has held that
the FLSA allows agreements for individualized arbitration.").

None of Peacock's substantive unconscionability arguments
presents a close call. Even factoring in the somewhat mixed
evidence about procedural unconscionability, the arbitration
agreement is not unconscionable.

**F. General Vindication of Rights**

Although statutory claims are arbitrable, the arbitral
forum must still provide for the effective vindication of the
statutory cause of action. Cole v. Burns Intern. Sec. Services,
105 F.3d 1465, 1482 (D.C. Cir. 1997). An arbitration agreement
cannot be upheld without considering the rights it waives or

the burdens it imposes. Id. An employee cannot waive the right to bring a particular type of claim in any forum, and an employee cannot be required as a condition of employment to waive access to a neutral forum. Id. In assessing the neutrality of a forum, courts consider whether the arbitration arrangement (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum. Id. (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)). A forum is not neutral where the employer has exclusive control over the list of potential arbitrators. McMullen v. Meijer, 355 F.3d 485, 493 (6th Cir. 2004).

Peacock raises three problems with the arbitration agreement: that the arbitral forum is not neutral because the arbitrator has a financial incentive to favor the employer, that the forum's rules are unfair because they give the arbitrator too much discretion and do not allow for necessary discovery, and that arbitration impermissibly limits employees' ability to pursue collective action. (ECF No. 32 at 7-11.)

First, Peacock argues that the forum is not neutral
because the arbitrator has an incentive to favor the employer
so that the arbitrator will be chosen for future disputes. (Id.
at 8.) Peacock notes that the arbitrator in his case ruled
favorably for a pizza company in a prior case and was chosen to
arbitrate a case with the same defense firm twenty days later.
(Id.)

The Supreme Court has found that arbitration rules that
protect against bias preclude invalidation of the agreement
based on potential bias. Gilmer, 500 U.S. at 30 (noting that
the relevant arbitration rules required disclosure of any
source of bias and that both parties had unlimited challenges
to the selected arbitrator for cause). The arbitration
agreement here dictates that arbitration will be conducted
pursuant to the American Arbitration Association's Employment
Arbitration Rules (the "Rules"). (ECF No. 20-1 at 3.) The Rules
protect against bias by requiring that the arbitrator have
experience in employment law, have no personal or financial
interest in the results of the proceeding, and have no relation
to the dispute or the parties that might create an appearance
of bias. AAA Employment Arbitration Rules and Mediation
Procedures, https://adr.org/sites/default/files/Employment-
Rules-Web.pdf, at 15 (last accessed December 6, 2022). The FAA

also protects against bias by allowing courts to overturn
arbitration decisions "[w]here there was evident partiality or
corruption in the arbitrators." 9 U.S.C. § 10(a). The
protections afforded by the AAA are at least as robust as those
upheld in Gilmer. 500 U.S. at 30-31. Peacock does not dispute
the content of the Rules or their applicability or explain how
his allegations overcome the Rules' protections. He has not
demonstrated bias.

Second, Peacock argues that the forum's rules are unfair,
citing the arbitrator's power to shape arbitration procedure
and asserting that employers would only choose arbitration if
the rules were unfair. (ECF No. 32 at 8-9.) Peacock argues that
limited discovery uniquely prejudices employees in driver-
reimbursement cases because third parties possess key evidence
(in the form of the reimbursement calculation method), but the
arbitrator is unable to compel pre-hearing discovery from third
parties. (Id. at 9.)

Peacock's general concern with the arbitrator's discretion
does not invalidate the agreement. "[A]greements to arbitrate
are desirable precisely because they trade the procedures of
the federal courts for the simplicity, informality, and
expedition of arbitration." Cole, 105 F.3d at 1482 (discussing
Gilmer, 500 U.S. at 31-32). Peacock does not cite specific

circumstances in which the arbitrator's discretion would prevent Peacock from effectively vindicating his statutory right. His general skepticism about the arbitrator's discretion is inconsistent with Cole and Gilmer.

Peacock's concern about discovery, if true, would raise valid questions under the Gilmer factors. Peacock's contention that driver-reimbursement claims typically require information from third parties would raise doubts about Peacock's ability to vindicate his rights under the FLSA if third-party information could not be obtained before the hearing.[4]

However, Peacock's concern is misplaced. His assertion that the discovery he seeks is prohibited relies on caselaw from other circuits. The Sixth Circuit has upheld a subpoena to a non-party for pre-hearing documents.[5] Am. Fed'n of Television

---

[4] Although Gilmer and Cole explain that limited discovery is to be expected in arbitration, both found that general limits on discovery were permissible, 105 F.3d at 1481, 500 U.S. at 31. The problem here is different because Peacock has explained how the procedural limitation would preclude obtaining evidence necessary to establish his claim. Peacock has shown that the procedural limitation, if present, would effectively waive the ability to vindicate the right and leave the right subject to the good faith of the employer. (ECF No. 32 at 9-10.)

[5] The Sixth Circuit upheld the subpoena power under § 301 of the Labor Management Relations Act. In reaching its decision, the Sixth Circuit relied on the FAA in determining what § 301 allowed. The Sixth Circuit favorably cited several district court opinions that found the FAA implicitly authorized pre-hearing subpoenas to third parties. See Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 215 n.7 (2d Cir. 2008) (discussing the Sixth

& Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of
Detroit, Inc.), 164 F.3d 1004, 1007 (6th Cir. 1999).

Third, Peacock criticizes arbitration for depriving
employees of the ability to pursue collective action. (ECF No.
32 at 11.) The Supreme Court has upheld arbitration agreements
that require individualized arbitration. Epic Systems Corp.,
138 S. Ct. at 1626 (noting that every circuit to consider the
question determined that the FLSA allows agreements requiring
individualized arbitration).

**G. Attorneys' Fees**

Defendants seek an award of attorneys' fees and costs
incurred in responding to the Complaint. (ECF No. 19.)
Defendants' request is based on a fee-shifting clause in the
arbitration agreement. (ECF No. 20-1 at 3.) That clause states
in pertinent part:

> To the extent that an Employee pursues a Covered Claim
> by some process other than the procedure outlined
> herein, the Employee will be responsible for damages,
> including, but not limited to, attorney fees and court
> costs, associated with the Company's enforcement of
> this Arbitration Agreement. (Id.)

Peacock argues attorneys' fees should not be awarded because
his arguments are not frivolous, awarding attorneys' fees would
constitute retaliation under the FLSA, the arbitration provision

---

Circuit's approach when listing circuits that have recognized pre-
hearing power to subpoena third parties).

22

requiring fee-shifting is unconscionable, and requiring a low-wage worker to pay attorneys' fees violates principles of equity. (ECF No. 32 at 43-44.)

There is no basis to ignore the terms of the agreement because Plaintiff's arguments were non-frivolous. The out-of-circuit cases Plaintiff cites do not establish that proposition. Isuzu Motors v. Thermo King Corporation considered whether the arbitration agreement covered a particular type of claim, not the validity of the agreement. No. 05-2174, 2006 WL 2255436, at *3 (D. Minn. Aug. 7, 2006). Isuzu did not hold that attorneys' fees are inappropriate whenever a party's claims are non-frivolous. It held that attorneys' fees are inappropriate where the claims are non-frivolous and the fee-shifting provision is inapplicable under the losing party's interpretation. Id. Pruteanu v. Team Select Home Care of Missouri, Inc. based its holding on Isuzu, but ignored the requirement that the fee-shifting provision be inapplicable under the losing party's interpretation. No. 4:18-cv-01640-AGF, 2019 WL 7195086, at *7 (E.D. Mo. Dec. 26, 2019). Hammond v. Floor & Decor Outlets of Am., Inc. said in a footnote that "upon cursory review" the fee-shifting provision seemed unconscionable but left resolution of that question "for another day." No. 3:19-cv-01099, 2020 WL 4700829, at *5 n.4 (M.D. Tenn. Aug. 12, 2020). None of these cases supports the proposition that non-frivolity alone is

23

sufficient to overcome the terms of the agreement. The remaining cases Plaintiff cites do not address arbitration. (ECF No. 32 at 43.)

Peacock bases his retaliation claim on 29 U.S.C. § 215(a)(3). That section creates a private right of action. It is not a contract defense. It does not preclude enforcement of the fee-shifting provision. Peacock's argument implies that a purported inconsistency between the arbitration agreement and § 215(a)(3) counsels against enforcing the fee-shifting provision. The question is whether the fee-shifting provision contracts away the right against retaliation. It does not. The fee-shifting provision does not discourage an employee from bringing an FLSA claim. It discourages an employee from bringing an FLSA claim in a particular forum. It encourages compliance with a contract provision to which both parties agreed.

Under Tennessee law, an agreement is unconscionable when the inequality of the bargain is so manifest that it shocks the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. Trinity Indus., Inc., 77 S.W.3d at 170-71. The fee-shifting provision does not shock the judgment of a person of common sense. It applies to both parties, and it encourages both parties to comply with the other terms of the arbitration

agreement. The cost-saving advantages of arbitration would mean little if extensive litigation were required to reach the arbitral forum. Peacock argues that the fee-shifting provision creates a chilling effect. (ECF No. 32 at 44.) It does so only to the extent that it encourages both parties to abide by the terms of their agreement.

Peacock has not shown that attorneys' fees should be denied as a matter of equity. The fee-shifting provision is clearly stated in the agreement. It is not unconscionable. As explained above, it furthers the cost-saving goals of the agreement. Peacock has not provided, and the Court has not found, any examples of the proposed use of a court's equity power to strike a contract provision like the one at issue here. Peacock's equity argument is an indirect method of rearguing his unconscionability defense.

Peacock has not established that attorneys' fees and costs should not be awarded according to the terms of the arbitration agreement.

## V.   Conclusion

For the foregoing reasons, Defendants' Motion to Compel Arbitration is **GRANTED**.   This case is **DISMISSED WITHOUT PREJUDICE.** Defendants' request for attorneys' fees and costs is **GRANTED** in accordance with the arbitration agreement. Defendants are ordered to submit and support a request for the fees and

costs they have incurred within fourteen (14) days of the entry of this order. Plaintiff shall have fourteen (14) days to respond. The parties are directed to proceed to arbitration in accordance with the terms of their agreement.

SO ORDERED this 6th day of December, 2022.

/s/ *Samuel H. Mays, Jr.*

_____

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE